By the Coubt,
Babboub, J.
Only seven items of the defendant’s account were objected to by the plaintiffs, before the referee, and in their exceptions to the report.
First. So much of the item of $3207.12 for the Conant mortgage, as exceeds the price at which it was purchased by the defendant.
The disallowance by the referee of the objection, was proper. The complaint expressly admits that the defendant is entitled to a credit for the entire amount.
Second. The charge of $200 per year, for eleven years’ time spent in the general care and supervision of the plaintiffs’ interest and securities in St. Lawrence county. The testimony taken before the referee, shows that prior to February 7,1845, the defendant, under the employment of the company, had foreclosed a number of mortgages for them, and purchased, in the property for their benefit; that, on the day last mentioned, he was appointed by the company their agent and attorney, to take charge of all the property so purchased in by him, consisting of a large number of parcels of land, and to convert it into money by sales or private negotiation for ready money or on credit, under the direction, and constant advice of the plaintiffs, and, also, to secure and collect as much of a debt due to them from the St. Lawrence Bank, as might be practicable ; and that he was actually engaged in the business of such agency more than eleven years, for a large portion of the time doing something in his office almost *359 daily in regard thereto, and having, during all that period, frequent interviews and consultations with the officers of the company, and making many journeys to St. Lawrence county and elsewhere, in prosecuting the business of such agency. Upon a careful examination of all the evidence touching these matters, I am fully convinced that two hundred dollars per year was a very moderate charge for the services which must have been rendered by the defendant, in the business of his agency alone, independent of, and over and above, such charges as he was properly entitled to or did make, specifically, by way of fees or commissions, for his services as attorney or counsel, in suits brought by or against the company, or in which they were interested, or' for the traveling expenses and other disbursements he has charged in his bill.
Third. The charge of $1539.71, for commissions and. counsel fees in prosecuting, through the courts,, including the Court of Appeals, the disallowance of Henry Van Rensselaer’s claims as a creditor of the St. Lawrence Ranh. That litigation was, originally, a suit in chancery, brought by the bank commissioners of the state of New York against The St. Lawrence Bank and Henry Van Rensselaer, its president. In August, 1848, an order was made appointing Mr. George Redington referee, and directing him to take and state the accounts of R. H. Gillett, the receiver of the bank, to examine the claims of all the creditors of the bank, and report the same, with his opinion, &c. The defendant attended and acted, upon such reference, as the counsel of The Farmers’ Loan and Trust Company, as well as for several other creditors, and the receiver. The whole of the claims allowed by the referee, amounted to $149,321.96 ; of which $76,680.32 was awarded to Henry Van Rensselaer, and $49,413.96 to the Farmers’ Loan and Trust Company. Exceptions were taken to the report in respect to the allowance to Van Rensselaer, and were argued by Mr. Mann, in the Supreme Court and Court of Appeals, the result of which was a new reference and the reduction of the claim of Van Rensselaer to $22,395.28, and the consequent increase of the distributive share of The *360 Farmers’ Loan and Trust Company, in "the realized assets, from $7815.35 to $15,397.18. Considering the amount and nature of the services rendered by the defendant in St. Lawrence county and elsewhere, away from home, during that protracted litigation, and the result thereof, I am unable to perceive that the claim was unreasonable, even though the specific charges of April 24, 1850, and June 1, 1853, of $100 each, be added thereto.
Fourth. The charge of $190.12, for Meyer’s hill of $40.69 for fare and expenses, and $150 for time spent and counsel fee, making in all, $380.69. All these charges were made in the suit brought by Q-illet against Van Rensselaer. The counsel for the appellants claims that The Farmers’ Loan and Trust Company were in' no wise interested in that litigation. It is true, it does not clearly appear from the evidence, whether the suit was brought by Grillet as receiver, or in his individual capacity, although it may well be inferred from the fact that the receipts upon which the action was founded, commenced with the words “ In the matter of the Receivership of the St. Lawrence Bank,” and acknowledged the receipt of the funds and property therein mentioned, from “ R. H. Gillet, receiver ” &c. and that such funds and property really belonged to the assets in the hands of Mr. Gillet as receiver, that the suit in question was, probably, brought by him as such receiver. The question cannot be very important however, for in either case, the" judgment the moment it was recovered, became and was a portion of the assets held by Gillet in trust as assignee, for the benefit of The Farmer’s. Loan and Trust Company, and the other creditors of the bank. Indeed, those receipts, and therefore, the judgment, when recovered, constituted the principal fund for the benefit of the creditors. How, then, can it be said that The Farmers’ Loan and Trust Company has no interest in that litigation which Mr. Mann ought not to have protected as he appears to have done, by virtue of his powers as their agent ? It may be that Mr. Gillet had made himself personally liable to the creditors for the amount, but it by no means follows that Mr. Mann would *361 have heen justified in omitting to prosecute the equitable claim of the company in that suit against another person, who was also, and primarily, liable. It appears to me that Mr. Mann’s intervention in that suit, in behalf of the company was expedient and judicious, and that his charges for counsel fees and disbursements in the matter were reasonable and proper.
Fifth. The charge of $2237.12 for five and a half years’ interest, upon the defendant’s account, for services and disbursements. As a general rule, interest is not chargeable, in the absence of a special or implied agreement, upon an open unliquidated account, like that of the defendant, except, perhaps, in so far as such account consists of advances. (Rensselaer Glass Factory v. Reid, 5 Cowen, 587.) If, therefore, the defendant had charged interest upon his claim for services, without crediting the plaintiffs, in his account, with a corresponding sum over and beyond the account to which they were entitled, that would have constituted an over charge which ought to have been disallowed by the referee. But if, on the contrary, the account is so stated that, in its final results, it debits the defendant and credits to the plaintiffs, the full amount of interest which the latter are entitled to have from the former, no injustice has been done because of the particular manner in which such account -of interest was made up and stated by the defendant. Let us see how that is.
The accounts rendered by the defendant to the plaintiffs, were made up in a most inartificial and unbusiness like manner. There are three of them. The first credits the company with the entire amount of all the dividend which the company was entitled to receive from the assets of the St. Law-And charges them the sum of $8423.43, as “ paid per A. M. Jr. account,” (and which is, in fact, precisely the amount of *362 the defendant’s account for services and disbursements, and the interest thereon, ($8047.85.) with the addition of a check for' $375.58, then given by him to the plaintiffs,) and, also, debits to the company $3207.12 for the Conant mortgage, and $190.12 for Meyer’s bill; thus making charges, in the aggregate amounting to $11,820.67, and showing a balance of $8065.67, to the credit of the company, which is left undisposed of in the account, but which is exactly the amount that was paid to the plaintiffs in the defendant’s check. The second is, simply, the defendant’s account for his' disbursements and services, with the interest thereon, amounting to $8047.85, and is stated in the usual manner. The account credits the company with the amount of the bids at the receivers sale, $4759, and the interest thereon, for eleven years, being $3664.43, and making an aggregate of credits of $8423.43; and charges them, there, with the amount of the account of the defendant for services and disbursements, as shown by No. 2, $8047.85, thus leaving another balance due to the plaintiffs of $375.58 ; and which balance was paid by the defendant in his check, and receipted for at the foot of that account. No. 3, by the president of the company. It seems quite clear, therefore, that, in those three accounts taken as a whole, the defendant has charged the company twice with the amount of his bill for services, &c. and the check for $375.58, as offsets to two distinct credits he has given them ; that is, in the first account, as an offset against the $19,886.34, and in the third as an offset against the credit given for the purchase of the assets, and interest thereon.
*361 rence Bank,............$15,397 18
And the accumulated interest,...... 4,489 16
Making, in all,...........$19,886 34
*362 One of those double charges was certainly wrong, if both of the credits so given, to the company, were properly inserted in the accounts and ought to have been allowed; and it follows, in that case, that the defendant is still indebted to the plaintiff in, at least the sum of $8423.43 ; that being the amount of the overcharge in-question. Upon a full and careful examination of the pleadings and evidence bearing upon the subject, however, I am satisfied, that the account No. 3, is wholly erroneous, from beginning to end, including, of course, *363 the credits, as well as the debits. For, not only is no claim made in the complaint for the amount of those bids at the receiver’s sale, but the evidence shows that the defendant was never indebted nor liable to pay to the company any thing whatever on account of such bids. The history of that matter, as disclosed by the testimony, is, briefly, this : at the final sale of the assets of the St. Lawrence Bank, in Albany, by the receiver, on the 2d of September, 1846, the defendant, as agent for the plaintiffs, bid for and purchased property to the amount of $4759, for which he gave a receipt, as such agent, to apply in payment upon any dividend which might be payable to the company, as creditors of the bank : and the defendant added thereto his personal guaranty that such amount should be so applied. After that, an arrangement was made between the defendant and the president of the company, whereby it was agreed that the former should assume those purchases and pay the receiver the amount of the bids, thus making him the debtor, not of the company, but of the receiver, to that extent. Besides, the amount of those bids was paid by the defendant to the receiver, and went into and formed a part of the general fund in the hands of the latter, and is included in the account No. 1, furnished by the defendant to the company, and, is there credited and allowed to them as having been received by the defendant as a dividend, from the receiver. For, the order in the suit of The Bank Commisssioners v. The St. Lawrence Bank, directed that the accounts of the receiver, Mr. Grillet, be referred to and passed before Mr. Redington, (the first referee ;) and upon that reference the receiver brought before such referee his accounts, embracing the whole of his receivership, from first to last. In the accounts so presented to the referee by Mr. Grillet, the latter charged himself with the amount of all the sales made by him in Albany, including those made to the defendant as the agent of the company, as so much money received by him from the assets and property of the bank; and the account was thus passed by the referee. The amount *364 of all those charges against the receiver, and so passed was $29,115.72, from which the referee deducted $5498.56, as an allowance for the costs, commissions and expenses of the receiver, leaving a balance of $23,617.16 in the hands of the latter, as the fund to be distributed to the creditors. That fund, however, was not distributed immediately, such distribution being delayed by reason of an appeal taken to the Court of Appeals from the order of the Supreme Court, confirming the referee's report touching a claim allowed by him to Henry Van Rensselaer, as a creditor ; but not, in any manner, affecting the report as to the balance in the hands of the receiver, the same not being excepted to. After the decision upon that appeal, and in February, 1853, J. L. Russell was appointed a referee to make such a re-distribution of the funds in the hands of the receiver as was found to be necessary under the decision of the Court of Appeals, disallowing a portion of Van Rensselaer’s claim. Under that order, the referee assumed, and took the amount reported by the former referee, Mr. Redington, as in the hands of the receiver, subject to distribution, to be correct, and, after adding thereto the interest to the first of June, 1853, the date of his report, proceeded to, and did, allot and distribute such fund, then amounting, with the accumulated interest, to $29,612.43, to and between the creditors, and, in that allotment and distribution awarded to The Farmers’ Loan and Trust Company as their portion of the fund, $15,387.18 ; which is, precisely, the amount that is credited to the company in the defendant’s first account as the “ St. Lawrence dividend.” In. examining the question as to the amount of interest that ought to be allowed to the plaintiffs and the defendant, respectively, we may therefore consider the account Ho. 3, as wholly erroneous, and consequently, that no interest upon the amount of the bids therein mentioned, ought to have been allowed to the plaintiffs by the referee. The question, then, is¿ whether such an allowance was, in fact, made by him.
The real condition of the accounts between the parties, at *365 the time of the alleged settlement, may, properly, be stated thus : The company should be credited with
The St. Lawrence dividend,.......$15,397 18
With the interest thereon,....... . 4,489 16
$19,886 34
And charged with
The Conant mortgage, ..... $3,207 12
„ Myers’ bill,........ 190 12
Defendant’s account for services and
disbursements, (No. 2,) . . . 5,810 73
With interest thereon if allowable, 2,237 12
- 11,445 09
Thus exhibiting a balance of,.......$8,441 25
Which balance was then paid by the
defendant, in his check for, . . ■ $375 58
And another for,....... 8,065 67
-- $8,441 25
And all of those credits and charges, and no more, were substantially contained in the account or general statement No. 1; the only exception being, that, in the paper last mentioned, the defendant added the payment of $373.58, which was then made, to the amount of his account No. 2 for services, &c. and debited the same in one sum of $8423.43 as “paid A. M., Jr., account.”
Now, the referee has found, as facts in the case, that the plaintiffs and the defendant, on the 12th of September, 1857, accounted together for the $19,886.34, which had come to the hands of the latter, and for the services performed for, and the moneys paid to the company by him; and that, on such accounting, the balance stated to be due from the defendant to the plaintiffs was $375.58, which sum was then paid over to the latter. That finding was correct, to a single penny, if the referee assumed, as he well might, that the account No. 3, did not form a portion of and was not included in the settle *366 ment of the claim of the plaintiffs for the $19,886.34 which had been received by the defendant from the St. Lawrence dividend, but such finding would have been entirely erroneous if the referee had arrived at the conclusion that such account was included in the settlement of that claim. For, in the latter case, it would not be true that “ on such accounting, the balance stated to be due from the defendant to the plaintiffs was $375.58,” but, on- the contrary, .there would have been a balance, stated in and appearing upon the face of such accounts, of $8423.43, due to the plaintiffs, being the amount of the credit given to them in account No. 3.
It seems clear, therefore, that no interest was allowed to the' plaintiffs hy the referee, except what is credited to them in account No. 1, and to that they were entitled, for the reason that such interest, as well as the principal sum, was paid over to the defendant by the receiver; and it follows, that the allowance of interest by the referee, upon the open, running account of the defendant for his services was contrary to the well settled rule of law upon the subject, unless such allowance was warranted by a settlement made between the officers of the company and the defendant; and that brings us to the last exception which it is necessary to consider, to wit:
That the referee erred in deciding that the transaction of the 12ih of September, 1857, between the defendant and the officers of the company, constituted a final settlement of the accounts between the parties.
Undoubtedly it was competent for the company, acting by its proper officers and agents, to make an agreement with the defendant whereby interest should be allowed as credited to him, to which he was not entitled under the strict rules of law, and that agreement, if made upon a final settlement of the accounts between the parties, and in consideration thereof, would be valid. We must, therefore, consider first, whether the acts of the officers of the company in making the arrangements with the defendant on the presentation of his accounts. *367 get up in the answer, were the acts of the company, and if so, then what such arrangement was, and its effect.
There is no evidence in the case tending to show that the president of the company was empowered by them to make a settlement with the defendant, except what may he found in the company’s by-laws, the 11th section of which provides that “ all business relating to * * real estate securities, * * and the holding and managing any lands granted to the company, * * or taken in payment of debts, * * and in selling the same, shall be managed by a committee of investments and finance and the 13th section declares that such committee “ shall audit all accounts against the company.’’
For more than eleven years prior to and, nearly, if not quite, up to the time of the alleged settlement between the defendant and the officers of the company, the former was employed by and acted as the agent as well as the legal attorney and counsel of the company, and as such, collected debts, foreclosed their mortgages took charge of, managed and sold their lands, including a great number of transactions, and a large amount in value ; during all of which period he was in the habit of consulting with, and receiving instructions from, the president and secretary as often, at least, as once a fortnight, (being some hundreds of times in all,) in regard to the conduct and management of such business, and it may he added, he, also, during that period, settled with the president an account rendered by him against the company, for a portion of such services, amounting to over $2000 ; and there is no evidence in the case that such defendant ever received instructions from, or reported to, or was in any manner interfered with by, any. director or officer of the company, other than the president and secretary, or that he had any knowledge of the existence of their by-laws, until after the alleged settlement. Considering all this, it may well be assumed as a legal conclusion, not only that the defendant had a right to suppose that the officers with whom he had thus transacted business for so long a time without objection on the part of the company, were empowered to *368 settle his accounts, in relation to such business, with him, as had theretofore been done in'a similar case, but that they were in fact legally authorized to do so, for, it will be observed, all the business transacted by the defendant was confided, in the by-laws to the management and control of the finance committee, and, yet, for eleven years, the company permitted its president and secretary to manage the same, to the entire exclusion, for aught that appears, of such committee; thus showing, most clearly, a fixed design and intention on the part of the company to waive and abandon, so far as that business was concerned, the by-laws which they had adopted, for their own government in regard to the powers of the finance committee. Besides,- the same by-laws which direct the finance committee to audit all accounts against the company, also provide that the president shall be a member of all standing committees, including the finance committee, and declare that he “ shall have the general direction and superintendence of the affairs of the company.” There was, therefore, not only an acquiescence on the part of the company in the assumption by the president of the duties which had been conferred upon the finance committee, but he acted under and in pursuance of the broad and general powers thus given to him by the bylaws. My conclusion is that the officers in question were fully authorized to make a settlement with the defendant.
But can it be said that the alleged settlement of the accounts which, were rendered by the. defendant, in the form in which they were presented, and under the circumstances detailed by the witnesses, was a valid settlement of the accounts between the plaintiffs and the defendant as the same really stood, and ought to have been stated ?
It would be difficult to believe, without strong proofs, that the defendant could have rendered, or that the principal financial officer of a great moneyed institution in this city could .have passed and settled as correct, such accounts as those in question ; but the referee has so found the fact to be, and his conclusion in that regard is fully sustained by the evidence. *369 The accounts so presented and passed, were, certainly, erroneous, inasmuch as they included, as a whole, a double credit which was therein given to the defendant for the amount of his detailed account No. 2, for services and disbursements, with interest, being the sum of $8047.85. But that double credit was patent upon the face of the accounts, and could hardly have been passed unnoticed by either of the parties; so, too, it was wholly erroneous to include in such settlement, as a portion of the matters which were to be arranged, the account No. 3, or to apply the payment of $375.58, in satisfaction of the balance of the sum there credited to the company. But the president was "well aware, when such settlement was made, that the defendant had not only assumed those bids as his own, and had undertaken to pay the receiver, and, therefore, was not indebted to the company therefor, but that the amount of such bids was included in the dividend and credited to the company by account No. 1, and he, therefore, knew that the credit given to the latter in account No. 3, did not belong to them. The officers of the plaintiffs, therefore, could not have been deceived, by the presentation of the account last mentioned, nor, indeed, is there any pretense to be found either in the evidence or the entire case, that they were, and, as has already been remarked, if that account is left out, a full, true, and accurate' statement bf all the accounts between the parties, as such accounts actually existed, is, substantially, contained in Nos. 1 and 2, with the single exception of the arithmetical mistake of $38.16, noted by the referee, and which, in fact, is an errror in adding up the items in account No. 2. In view of all this, it seems impossible to arrive at any other conclusion than that the charges and credits in account No. 3 were ignored and disregarded, as they ought to have been, by the plaintiffs’ officers and the defendant in the settlement of the claim for the dividend, upon which this action is founded ; and it follows that the claim in question was fully settled, and that, upon such settlement, and in consideration thereof, the defendant was allowed and credited with the interest upon his *370 chárges for services, as well as disbursements, by a valid agreement between the parties. Ho, error, therefore, was committed by the referee, in the allowance of interest to the defendant, to which the exception in question was taken.
Hone of the exceptions being sustained, the judgment appealed from should be affirmed, with costs.
J cites, J.
The referee has found as a fact that about the 12 th of September, 1857, the plaintiffs and defendant accounted together for money received by the defendant for the plaintiffs and for moneys paid by him to them, and for their use and benefit,. and for the services rendered by the defendant to the plaintiffs at their request and for their use and benefit; and that on such accounting the balance stated to be due from the defendant to the plaintiffs was $375.58, which sum was then paid by the defendant to' the plaintiffs.
The alleged accounting was had with the president of the plaintiffs. On the question as to whether there was an accounting with the president, the evidence is conflicting, and the referee, on the conflicting evidence, having found that there was such accounting, the court will not, on appeal, disturb such finding.
It is, however, claimed that as matter of law the president had no authority to bind the plaintiffs by this' accounting. I think he had, for the reasons given by the presiding justice, in that portion' of his opinion in which he discusses the authority of the president.
The account, although settled, may still be opened for correction, for fraud, mistake, mutual or palpable error.
It may well be doubted whether the plaintiffs are in a position to attack the settlement on either of these grounds, since the action is not brought to open and correct the account; but conceding the plaintiffs to be in a position to attack it, still the evidence Shows no ground for opening and re-settling the account.
*371 There are but seven items objected to. The first six were under the pleadings and evidence properly chargeable against the plaintiffs, for the reasons given by the presiding justice in that portion of his opinion, in which he considers the 1st, 2d, 3d and 4th exceptions. These items being included in the 4th exception.
The 6th item is for interest. It was undoubtedly competent for the plaintiffs to allow interest to the defendant. According to the testimony of the defendant, the subject of allowance of interest to him was expressly discussed at the time of the settlement, and agreed on. Its allowance, under all the circumstances, was but equitable, and seems to have been so considered by the president of the plaintiffs.
Judgment affirmed, with costs.